Patricia V. Waterkotte (Bar No. 029231)
**Rusing Lopez Lizardi & Saffer, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
pwaterkotte@rllsaz.com

Kalpesh K. Shah (*pro hac vice*)
Emily Wilbur (*pro hac vice)*
Samantha L. Marchand *(pro hac vice)*
**Benesch Friedlander Coplan
& Aronoff LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
kshah@beneschlaw.com
ewilbur@beneschlaw.com
smarchand@beneschlaw.com

*Attorneys for Plaintiff Pyramid Technologies, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Pyramid Technologies, Inc., | NO. CV-26-01535-PHX-SHD |
| Plaintiff, | **NOTICE OF FILING FIRST AMENDED COMPLAINT** |
| v | |
| Freedom Gateway, LLC; SGK Vending, LLC; and SGK Tech, LLC, | |
| Defendants. | |

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 15(a)(2)

and Local Rule 15.1(b), Plaintiff Pyramid Technologies, Inc. ("Pyramid") hereby files its

First Amended Complaint.  Attached hereto is a copy of the First Amended Complaint indicating in which respects it differs from the initial Complaint (Doc. 1).

Pyramid files its First Amended Complaint with Defendants Freedom Gateway, LLC, SGK Vending, LLC, and SGK Tech, LLC's consent.

Dated: May 4, 2026

Respectfully Submitted,

*/s/ Patricia V. Waterkotte*

Patricia V. Waterkotte
**RUSING LOPEZ LIZARDI & SAFFER, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Arizona Bar No. 029231
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
Email: pwaterkotte@rllsaz.com

-and-

Kal K. Shah
Emily Wilbur
Samantha L. Marchand
**BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 624-6380
Telephone: (312) 212-4949
Telephone: (312) 212-4938
Email: kshah@beneschlaw.com
Email: ewilbur@beneschlaw.com
Email: smarchand@beneschlaw.com

*Attorneys for Plaintiff*

63874108.1

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this May 4, 2026 via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, to the following CM/ECF registrants:

Nasir S. Ahmed
**K&L GATES LLP**
One SW Columbia Street, Suite 1900
Portland, OR 97204
Arizona Bar No. 038608
Telephone: (503) 226-5739
Facsimile: (503) 248-9085
Email: nasir.ahmed@klgates.com

By: *J. Harris*

63874108.1                                          3

Patricia V. Waterkotte (Bar No. 029231)
**RUSING LOPEZ LIZARDI & SAFFER, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
Email: ~~pwaterkotte@rllsaz.com~~pwaterkotte@rllsaz.com

Kal K. Shah (*pro hac vice ~~forthcoming~~*)
Emily Wilbur (*pro hac vice*)
Samantha L. Marchand (*pro hac vice*)
**BENESCH FRIEDLANDER COPLAN
& ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
Email: ~~kshah@beneschlaw.com~~kshah@beneschlaw.com
          ewilbur@beneschlaw.com
          smarchand@beneschlaw.com

*Attorneys for Plaintiff Pyramid Technologies, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

|  |  |
|---|---|
| ~~PYRAMID TECHNOLOGIES, INC.~~ Pyramid Technologies, Inc., <br><br> Plaintiff, <br><br> ~~vs~~v. <br><br> ~~FREEDOM GATEWAY~~Freedom Gateway LLC; SGK Vending, LLC~~; and~~ SGK ~~VENDING~~Tech, LLC, ~~and SGK TECH, LLC,~~ <br><br> Defendants. | Case No.~~:~~ ~~————————~~ CV-26-1535-PHX-SHD <br><br> **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT AND TRADE SECRET MISAPPROPRIATION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Pyramid Technologies, Inc. ("Plaintiff" or "Pyramid"), by and through its attorneys, alleges as follows for its First Amended Complaint against Defendants Freedom

- 1 -

Gateway, LLC ("Freedom"), SGK Vending, LLC ("SGK Vending"), and SGK Tech, LLC ("SGK Tech") (all combined as the "Defendants" and SGK Vending, LLC and SGK Tech, LLC combined as "SGK Companies").[1]

## NATURE OF ACTION

1.     Pyramid brings this action to protect and enforce its rights to confidential and proprietary technology relating to its state-of-the-art prize ticket validating system misappropriated by Defendants. Specifically, Pyramid seeks through this action a permanent injunction, as well as direct, consequential, unjust enrichment, and punitive damages for Defendants': (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) unjust enrichment; (iv) trade secret misappropriation in violation of the Defend Trade Secrets Act (18 U.S.C § 1831 *et seq.*); (v) trade secret misappropriation in violation of the Arizona Uniform Trade Secrets Act, (A.R.S § 44-401, *et seq.*); and (vi) tortious interference with contract/business expectancy.

## THE PARTIES, VENUE, AND JURISDICTION

2.     Pyramid Technologies, Inc. is a Delaware corporation with its principal place of business in Mesa, Arizona.

3.     Freedom Gateway, LLC is a Pennsylvania limited liability company, with its principal place of business in Pittsburgh, Pennsylvania.

4.     SGK Vending, LLC is a Pennsylvania limited liability company, with its principal place of business in Pittsburgh, Pennsylvania.

5.     SGK Tech, LLC is a Pennsylvania limited liability company, with its principal place of business in Allentown, Pennsylvania.

---

[1] In an April 8, 2026 email, Defendants challenged all counts and sought a meet and confer. The parties met and conferred on April 18, 2026. While Plaintiff believes its initial complaint is sufficient under the Federal Rules, Plaintiff amends herein consistent with this Court's Preliminary Order in an effort to minimize motion practice.

6.     Based upon information and belief, all members of Defendants are citizens of Pennsylvania.

7.     Defendants' CEO and principal, Connor Alexander, is a member of Defendants and is a citizen of Pennsylvania.

8.     Upon information and belief, the Defendants are alter egos of each other, such that the treatment of each Defendant as a separate entity would promote fraud and injustice.

9.     ~~8.~~ The Defendants share common officers and directors, including but not limited to Connor Alexander, who controls the acts of the Defendants. This is evidenced in part by SGK Vending's mobile application, SGK Portal, which lists the key contact as having a Freedom email domain. ~~*See* Ex.~~ A true and correct copy of the SGK Portal app on the Google Play Store is attached hereto as Exhibit A. ~~Further the~~

10.     The Defendants all share a registered address of 129 Oak Park Place, Pittsburgh, PA 15243, which appears to be a residence. Plaintiff is unaware of any separation of the entities at that location, such as separate entrances or offices or even separate rent payments. Moreover, the Google Play listing for the SGK Portal application published by SGK Vending, LLC lists the developer contact information as Freedom Gateway with the support email address as support@freedomgateway.llc, and a secondary contact email of lucas@freedomgateway.llc. The listed business address for the application also is 129 Oak Park Pl, Pittsburgh, PA 15243-1145.

11.     Defendants ~~have~~ share similar websites, logos, and businesses. Indeed, Freedom and the SGK Companies' websites use identical color patterns and advertise the same kiosk:



*See* https://freedomgateway.com/#kiosk.



*See* https://www.skillgamekiosk.com/

12.    Upon information and belief, the Defendants commingle funds such that the assets and debts of each company are intertwined. For example, Freedom and SGK Vending both are listed as the debtor to lender CT Lien Solution, as reflected in UCC-1 filing with the Department of the State of Pennsylvania with record number 20250604150232. A true and correct copy of the UCC-1 filing is attached hereto as Exhibit B.

13.    9. None of theNotably, Defendants are not in good standing with the Pennsylvania Department of State. Thus, Defendants and therefore have not filed updated corporate documents necessary to establish them as separate entities.

14.    10. The Defendants are under common control and, present themselves interchangeably., and presented themselves as the same company to Pyramid during their relationship. As just one example, in response to prior allegations of misuse of Plaintiff's technology, Connor Alexander, in his role as CEO of Freedom, has made assertions regarding the SGK Companies, including stating and principal of SGK wrote in a December 2, 2024 letter, that "Freedom Gateway and the SGK Companies continue to abide by that [contractual] commitment…" See Ex. B. A true and correct copy of the December 2, 2024 letter is attached hereto as Exhibit C. Further, Mr. Alexander communicated to Pyramid indiscriminately with

both a Freedom and a Skills Game Kiosk email. A true and correct copy of an email from Mr. Alexander to Pyramid is attached hereto as Exhibit D.

15. Defendants should be treated as a single entity subject to the underlying contract and obligations. It would promote fraud and injustice to treat the Defendants as separate corporate entities as it would allow Defendants to evade liability for the acts and omissions of each entity through hiding behind the shield of another entity. Defendants failed to observe corporate formalities, operating the SGK Companies and Freedom interchangeably during the course of the relationship, and it would be an injustice to treat the companies as distinct entities to avoid liability.

16. 11. In addition, or in the alternative, the SGK Companies are "Affiliates" of Freedom. Pursuant to the OEM License and Sales Agreement (the "Agreement"), ~~attached hereto as Exhibit C,~~ an "Affiliate" means "with respect to a Party, any individual, corporation, partnership, joint venture, limited liability company, proprietorship or other entity which, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with such Party." *See* Ex. ~~C~~E, Agreement § 1.1~~.~~ A true and correct copy of the Agreement is attached hereto as Exhibit E.

17. The SGK Companies' website confirms that the SGK product line originates and relates to Freedom, as evidenced by the "Our Story" page on the website:

(Added)

*See* https://skillgamekiosk.com/about

18.    Indeed, in responding to an issue involving both Freedom Gateway and SGK, Connor Alexander in April 2024 wrote to Tomislav Jeras, the President and COO of Pyramid Technologies, "[o]n behalf of myself and Freedom Gateway, LLC and its affiliates and subsidiaries." In the letter, Mr. Alexander admitted that "Freedom Gateway, LLC and its affiliates and subsidiaries" use Pyramid's software pursuant to the "long-term business relationship between Pyramid and Freedom Gateway." A true and correct copy of the April 16, 2024 letter is attached hereto as Exhibit F.

19.    The SGK Companies are the affiliates and subsidiaries of Freedom referenced in Exhibit F. In Mr. Alexander's December 2, 2024 letter, Mr. Alexander directly refers back to commitments made in the April 16, 2024 letter, stating that "Freedom Gateway and the SGK Companies continue to abide by that commitment." *See* Ex. C.

## JURISDICTION AND VENUE

20.    12. This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Pyramid's claims against Defendants under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, raise a Federal question. Pyramid's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

21.    13. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

22.    14. This Court has personal jurisdiction over Defendants pursuant to Ariz. R. Civ. P. 4.2 because Defendants have purposefully availed themselves of the privilege of conducting business in the state of Arizona and this litigation relates to those activities that occurred in Arizona.

23.    15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and omissions giving rise to the claims arose in this district

and Defendants are subject to the eCourt's jurisdiction with respect to this action in this district, having agreed to a forum selection clause permitting litigation to be commenced in this Court.

///

///

## FACTUAL BACKGROUND

### I.    Pyramid's Business

24.    16. Pyramid is engaged in the business of developing, manufacturing, and distributing thermal printers, bill validators, and related software for the gaming industry, including proprietary hardware and software for use in connection with prize ticket validating systems.

25.    17. For 25 years, Pyramid has specialized in USA-made, high-quality hardware with custom integration and engineering support. Pyramid has built a reputation for trustworthiness and reliability which has led to worldwide success with products deployed in over 97 countries.

26.    18. Among other things, Pyramid contracts with customers to provide limited licenses to integrate and distribute its proprietary hardware and software to use in connection with a licensee's prize and ticket validating system.

27.    The Licensee Product, the ticket redemption kiosk/terminal ("TRT"), is installed with Pyramid's Licensed Software, though Pyramid's Software Development Kit or other mechanism. The Pyramid Thermal Printer, that is mounted in each gaming machine, pairs with the USB Key that is present in the TRT and Pyramid's Application Programming Interfaces materials to provide the handshake necessary to validate tickets in a safe, reliable and consistent manner.

28.    Pyramid's proprietary hardware and software, the printer, and licensee's ticket redemption kiosk work in conjunction to determine whether a prize ticket is valid. Pyramid's ticket validating system is uniquely positioned in the market as it is agnostic and works with

a variety of game manufacturers. Pyramid's unique and proprietary system confirms a prize ticket is authentic and prevents repeat redemption of a prize ticket.

29. This system is critical to reducing and preventing losses related to gaming system inefficiency and fraud.

30. Pyramid's prize ticket validation system took over six years and cost millions of dollars to develop.

## II. Pyramid's Protection Of Confidential Information

31. ~~19.~~ Pyramid's Confidential Information includes, among other things, information regarding its business, strategies, plans, suppliers, past, present, and prospective clients, finances, business plans, product development, technology, software, and intellectual property.

32. ~~20.~~ Pyramid protects its Confidential Information by, among other things, limiting the disclosure and use of its Confidential Information to only Pyramid employees and licensees; restricting access to this information by first requiring the signing of a contract to access the information; encrypting the USB Key to protect the confidential and trade secret nature of Pyramid's proprietary software, requiring Pyramid employees and licensees to execute written agreements that protect against the misuse and improper disclosure of this information; mandating the return of this information upon termination of employment with Pyramid; requiring the return of this information upon termination of licensees' relationship with Pyramid and/or at the request of Pyramid.

33. ~~21.~~ Consequently, Pyramid licensees, pursuant to their agreements with Pyramid, acknowledge that they will have access to Pyramid Confidential Information, promise to not disclose Pyramid Confidential Information to anyone not authorized to receive it, and confirm that they will treat Pyramid Confidential Information as confidential. In addition, the licensees also agree to use Confidential Information solely for the purpose of exercising its rights or carrying out its obligations under the Agreement, and for no other purpose.

34.    22. Pyramid licensees agree, upon termination of their relationship with Pyramid, to continue treating Pyramid Confidential Information as confidential, not disclose such information to anyone not authorized to receive it, and within 30 days of termination return all Pyramid Confidential Information and other company property to Pyramid.

35.    23. Hence, Pyramid Confidential Information is not available to the general public and is closely guarded by Pyramid. Pyramid keeps such information strictly confidential in order to maintain a competitive advantage in the highly competitive bill acceptor and, thermal printer, and related gaming machine software industry.

36.    24. Further, maintaining goodwill and a solid business reputation with its customers is a critical component of Pyramid's success.

**III.    Defendants Enter Into The Agreement With Pyramid**

37.    25. Freedom isDefendants are engaged in the business of manufacturing and distributing prize ticket redemption kiosks.

38.    Prior to Freedom's relationship with Pyramid, Defendants' prize ticket redemption kiosks did not, without integration of a third-party solution, contain a prize ticket validation system and/or software which is necessary to validate prize tickets.

39.    26. In order to offer a secure prize ticket validation solution, Freedom desired to obtain a license to integrate and distribute Pyramid's proprietary ticket validation hardware and software for use in connection with Defendants' kiosks.

40.    27. Accordingly, on or around June 15, 2021, Freedom executed the Agreement.

41.    28. Pursuant to the Agreement, Pyramid and Defendants entered into a licensor-licensee relationship.

42.    29. Pursuant to the license, Pyramid sent the API Materials, which contained Pyramid's proprietary Software Development Kit or "SDK" to Freedom, which contained confidential sample software code, specifications, and instructions. As the licensor, Pyramid would provide Defendants with an encrypted USB Key for use in accessing the Licensed Software.

- 9 -

43. 30. Under the Agreement, the SDK is defined as "the proprietary software development kit and sample software code provided by Pyramid to Licensee for the integration of the Licensed Software with Licensee Products." *Id*Ex. E, Agreement § 1.13.

44. 31. Further, API Materials means "Pyramid's proprietary SDK, instructions, and specifications that allow the development of an application that interacts with the APIs[12] for the Licensed Software." *Id*., Agreement § 1.3 and § 1.10.

45. 32. As the licensee, Defendants would use the API Materials, including the SDK, to develop an application so that the Licensed Software could be used with the Licensee Product, defined as "Licensee's prize ticket validator kiosk that accepts, validates, verifies, and issues payment of prize tickets printed by a gaming machine." *Id*., Agreement § 1.11.

46. 33. The USB Key operateds as a safeguard, ensuring only kiosks utilizing a software application developed by Defendants based on the API Materials wouldwill work with the Licensed Software, and corresponding printers. Defendants obtained the right to access and use the API Materials could only be obtained by first entering into a contract with Pyramid.

47. 34. When integrated, the Licensed Software works with the Licensee Product to verify, among other critical and valuable characteristics, prize ticket validity and value. This verification is a security measure that enables the Licensee Product to determine whether the prize ticket inserted is valid and a monetary value should be paid out by the kiosk. This is done by first pairing each printer with the kiosk and then Pyramid's software as implemented and verified by USB key provides prize ticket validation at the kiosk.

48. 35. Under the Agreement, Defendants acknowledged that the following is Pyramid "Confidential Information" and property:

> "all information relating to the business or affairs of a Disclosing Party (as defined in Section 9.1), including all trade secrets and proprietary or

---

[12] Under the Agreement, API is defined as "application-programming interfaces that provide access to certain functionality of the Licensed Software." Ex. CE, Agreement § 1.2.

confidential information in whatever form that is disclosed under this Agreement, such as information regarding a Party's business, strategies, plans, suppliers, clients, finances, business plans, product development, technology, and software, that is designated as "confidential" or by the nature of the information or the circumstances of its disclosure would reasonably be understood to be confidential. **Confidential Information of Pyramid includes the Licensed Software, API Materials, and Documentation.**[23]" (emphasis added).

Ex. ~~C~~E, Agreement § 1.4.

49. ~~36.~~ Pursuant to Section 9.1, of the Agreement, Defendants agreed that they would "use the Confidential Information solely for the purpose of exercising [their] rights or carrying out [their] obligations under the Agreement" and would not "disclose Confidential Information to any third party (except to its employees or contractors who have a need to know purpose and who are bound by written confidentiality obligations no less restrictive than those contained in this paragraph)." *Id.*, Agreement § 9.1.

50. ~~37.~~ Defendants also agreed to certain License Restrictions reflected in section 2.4 of the Agreement. Defendants agreed that the license granted "only allows Licensee to use and integrate one USB Key and the Licensed Software therein with one Licensee Product. Neither Licensee nor any of its distributors will sell or distribute the USB Key or any Licensed Software on a standalone basis." *Id.*, Agreement § 2.4.

51. ~~38.~~ Section 2.4 of the Agreement prohibits Licensee or any third party to:

"(a) use or copy the Licensed Software, API Materials, or Documentation, or any portion thereof, except as expressly authorized in this Agreement; (b) use the Licensed Software for any time sharing, service bureau, or similar agreement; (c) modify, translate, or prepare derivative works of the Licensed Software or Documentation or any portion thereof; (d) rent, lease, loan, sell, sublicense, transfer, or distribute the Licensed Software other than as part of the Integrated Product and as authorized in this Agreement; (e) reverse-compile, decompile, disassemble, reverse engineer, or otherwise attempt to obtain the

---

[23] Under the Agreement, Documentation is defined as "the written specifications, instructions, user manuals, and hardware and software requirements provided or made available by Pyramid for the inst~~i~~allation, integration, use and performance of the USB Key or tablet." *Id.*, Agreement § 1.5.

source code to the Licensed Software or portion thereof; (f) bypass or circumvent any control measures or protocols for the API Materials or Licensed Software; or (g) alter, remove or obscure any copyright, trademark, or other proprietary notices on or in connection with the Licensed Software, API Materials, or Documentation." *Id*.

**IV.   Defendants Breach The Agreement**

52. ~~39.~~ In early February 2024, Defendants began using the Confidential Information in an unauthorized manner and clearly outside of the scope of the license grant.

53. ~~40.~~ Specifically, Defendants began running the Licensed Software on a server in a manner that regulates the pairing and unpairing of the Licensed Software for use with multiple Licensee Products in a "round-robin" type architecture.

54. ~~41.~~ This architecture allowed Defendants to use one USB Key or one tablet to pair and unpair countless printers.

55. ~~42.~~ In other words, Defendants created a time-sharing arrangement to circumvent the Parties' explicit agreement that one Licensed Software is to be integrated with one Licensee Product per USB Key. In essence, Defendants mitigated the number of USB Keys used to operate ~~its~~their Licensee Products ~~in order~~ to avoid paying licensing fees.

56. ~~43.~~ On March 28, 2024, Pyramid sent a cease-and-desist letter to Defendants notifying Defendants that their unauthorized use of the Licensed Software was a material breach of the Agreement, as well as copyright infringement and trade secret misappropriation of Pyramid's intellectual property. In its letter, Pyramid requested Defendants provide (1) the total number of Licensee Products that have been used with the Licensed Software; (2) when that use occurred; and (3) for which customers. A true and correct copy of the March 28, 2024 letter is attached hereto as Exhibit ~~D~~G.

57. ~~44.~~ Defendants denied any wrongdoing and ultimately stopped purchasing USB Keys from Pyramid by January 2025.

58. ~~45.~~ Unbeknownst to Pyramid, Defendants improperly bypassed and circumvented control measures and protocols in Pyramid's Confidential Information, thereby

allowing Defendants to use Pyramid's Confidential Information to create a software solution without abiding by Pyramid's restrictions and allowing Defendants to impermissibly expand their use and even compete with Pyramid. Defendants, therefore, impermissibly incorporated and utilized Pyramid's Confidential Information including its proprietary prize ticket ~~authentication solution~~validating system in Defendants' offerings.

59. ~~46.~~ SGK is advertising the fact that its kiosks contain ticket validating software within the kiosk itself. *See* https://www.skillgamekiosk.com.



60. ~~47.~~ Defendants therefore are impermissibly selling SGK Ticket Redemption Kiosks that contain a software solution that was based on unauthorized use of Pyramid's Confidential Information, in direct breach of the Agreement.

**V.    Defendants' Misappropriation Of Pyramid's Trade Secrets And Interference With Pyramid's Customer Relationships**

61. ~~48.~~ As stated *supra* Paragraph ~~45~~58, Defendants improperly accessed, incorporated and utilized Pyramid's Confidential Information to replicate the technology instructed by and contained in such materials and further to create a software solution to sell in its kiosks.

62. Specifically, Defendants circumvented Pyramid's control measures to access Pyramid Confidential Information, such as Pyramid's source code. Defendants then used Pyramid's Confidential Information, including but not limited to its proprietary source code, to develop a similar and competing ticket validation solution.

63. Upon information and belief, Defendants also improperly utilized other Pyramid Confidential Information, including but not limited to the API Materials, SDK, and Documentation, to develop a similar and competing ticket validation solution.

64. In or around January 2026, Pyramid engineers analyzed the source code contained in Defendants' kiosk.

65. Disturbingly, through its analysis, Pyramid discovered clear artifacts evidencing that Defendants utilized Pyramid Confidential Information to develop their kiosk containing a prize ticket validating solution. Indeed, the similarities in Defendants' code to Pyramid's code overwhelmingly establish Defendants' misappropriation.

66. Remarkably, on March 16, 2026, Defendants' counsel admitted in a letter to Pyramid's counsel that Defendants used Pyramid's cryptographic scheme to develop Defendants' ticket validation system.

67. 49. Through the unauthorized use of Pyramid's Confidential Information Defendants have integrated a version of Pyramid's proprietary prize ticket validating solutionsystem into Defendants' kiosks.

68. Defendants leapfrogged years of development work and millions of dollars in investment through improper utilization of Pyramid's Confidential Information.

69. Accordingly, it is no coincidence that the source code contained in Defendants' kiosk is strikingly similar to Pyramid's proprietary source code and validation framework.

70. 50. Defendants, therefore, are selling kiosks formulated from Pyramid's Confidential Information including usurping sales to Freedom's customers.

71. 51. Consequently, Defendants are Pyramid's competitors.

72. 52. Pyramid has lost both existing and prospective customers to Defendants.

73. 53. Specifically, Integrated Computer Software ("ICS") was a Pyramid customer, purchased Pyramid's proprietary hardware and software for use in connection to its prize ticket validating systems, and had a contract with Pyramid.

74. ICS was a Pyramid customer for approximately one year.

75. On or around February 8, 2024, ICS executed an OEM Sales and Licensing Agreement with Pyramid.

76. During ICS and Pyramid's one-year relationship, ICS placed regular orders with Pyramid. In fact, the number of USB Keys ICS purchased increased or remained the same with each order.

77. ICS informed Pyramid that it intended to continue placing orders as it built out its route with Pyramid's ticket validation solution.

78. In addition, the cadence of ICS' orders suggested it would continue to do business with Pyramid and continue purchasing USB Keys from Pyramid.

79. Accordingly, Pyramid expected ICS to continue doing business with Pyramid and to continue purchasing USB Keys from Pyramid.

80. However, ICS no longer does business with Pyramid and instead purchases Defendants' kiosk which contains the software solution created from Pyramid's Confidential Information.

81. Upon information and belief, Defendants knew ICS was a Pyramid customer.

82. Through trade shows, marketing, word of mouth of other operators, and the nature of the industry, it is reasonable that Defendants knew ICS was a Pyramid customer or, at the very least, knew TRT and similar kiosk providers are generally Pyramid customers. By way of example, the Pyramid Thermal printer that is installed in gaming machines has Pyramid's logo, reflecting that Pyramid's ticketing process and protocols are used by a certain customer.

83. Further, upon information and belief, Defendants are intentionally targeting Pyramid customers, including but not limited to ICS, to usurp Pyramid's business through trade shows, direct marketing, and other means.

84. ~~54.~~ Plainly, Defendants refuse to honor the duties and obligations they owe Pyramid under the Agreement and the law by, among other things, using Pyramid Confidential Information to compete with Pyramid.

## VI.    Irreparable Harm to Pyramid

85. 55. Defendants are harming Pyramid's legitimate business interests, including its goodwill and customer relationships, by selling Defendants' kiosk, which was created with the use of Pyramid's confidential and trade secret information, to Pyramid customers.

86. 56. Moreover, Defendants are still in possession of Pyramid Confidential Information, and the only reason for Defendants to possess Pyramid Confidential Information is to use Pyramid Confidential Information on behalf of Defendants.

87. 57. Consequently, it is both probable and imminent that an existing or prospective customer may purchase products or software from Defendants instead of from Pyramid.

88. 58. In fact, at least one Pyramid customer, ICS, has purchased products from Defendants instead of Pyramid.

89. 59. It is also both probable and imminent that Pyramid Confidential Information, goodwill and customer relationships are at significant risk and exposure since Defendants, who are now a Pyramid competitor, could use and have used Pyramid's Confidential Information to illegally compete with Pyramid.

90. 60. Injury to Pyramid is therefore both probable and imminent because Defendants clearly intend to continue violating the Agreement and the law.

91. 61. Put another way, Pyramid is suffering irreparable harm which may not be adequately rectified or compensated by money damages.

92. 62. Accordingly, Pyramid is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Pyramid.

## COUNT I

### Breach of Contract

93. 63. Plaintiff realleges and incorporates by reference each paragraph above as if set forth herein.

- 16 -

94. 64. On or about June 15, 2021, Freedom entered into the Agreement with Pyramid. (Exhibit CE).

95. 65. The Agreement is a valid and enforceable contract.

96. 66. Upon information and belief, Freedom and the SGK Companies were bound by the terms of the Agreement.

97. 67. Under the Agreement, Defendants were prohibited from using or copying the Pyramid's Confidential Information except as authorized under the Agreement; expressly excluded was any right to create derivative works, reverse engineer, or access the source code of the Licensed Software or bypass or circumvent any control measures or protocols for the API Materials.

98. 68. Defendants further agreed to not use Pyramid Confidential Information for any purpose other than for performing their obligations or exercising their rights under the Agreement.

99. 69. The covenants found in the Agreement are reasonable and necessary to protect Pyramid's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

100. 70. Pyramid has performed all of the duties and obligations it owes Defendants under the Agreement.

101. 71. Defendants breached the Agreement, and continue to breach the Agreement by, among other things, selling kiosks that contain a software security solution that was developed by impermissibly accessing, replicating, and copying Pyramid's Confidential Information.

102. 72. Pyramid has incurred significant damages as a result of Defendants' breach of the Agreement. Defendants' illegal actions have also damaged Pyramid's goodwill, reputation, and legitimate business interests. Pyramid's damages are in excess of $75,000.00, with an amount to be proven at trial.

103. 73. Moreover, Defendants' breaches of the Agreement are continuing. Pyramid is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

104. 74. Pyramid has no adequate remedy at law and, unless injunctive relief is granted, Pyramid will continue to be irreparably harmed by Defendants' breach of the Agreement in a manner that is not fully compensable by money damages.

105. 75. Pyramid therefore requests that this Court grant injunctive relief against Defendants that prohibits Defendants from (a) accessing, duplicating or modifying Pyramid's Confidential Information, (b) selling any product, including any integrated kiosk or software, which contains Defendants' software solution created with Pyramid's Confidential Information, and (c) disclosing or selling Pyramid's Confidential Information to any third party.

106. 76. Pyramid further requests that this Court order Defendants to immediately return to Pyramid all Pyramid Confidential Information and property in their custody, possession, or control.

107. 77. Finally, Pyramid is entitled to recover the attorneys' fees and costs Pyramid incurs as a result of Defendants' breaches of the Agreement.

///

///

///

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

108. 78. Plaintiff realleges and incorporates by reference each paragraph above as if set forth herein.

109. 79. On or about June 15, 2021, Freedom entered into the Agreement with Pyramid. (Exhibit CE).

110. 80. The Agreement is a valid and enforceable contract.

- 18 -

111. 81. A party to a contract has an implied duty to act fairly and in good faith.

112. 82. Defendants, as parties to the Agreement, owed a duty of good faith and fair dealing to Pyramid.

113. 83. Defendants prevented Pyramid from receiving the benefits of the Agreement and acted in a way inconsistent with the Agreement and Pyramid's reasonable expectations by, among other things, using Pyramid's Confidential Information in a way that is prohibited by the License Grant, including selling kiosks containing a software solution created through the use of Pyramid's Confidential Information, thereby soliciting Pyramid's customers so that they no longer purchase from Pyramid but instead purchase ticket validating systems from Defendants, and dealing dishonestly with Pyramid.

114. 84. As a result of Defendants' breaches of the implied covenant of good faith and fair dealing, Pyramid has suffered, and continues to suffer harm, including but not limited to, misappropriation of its confidential, proprietary, and trade secret information, goodwill, and customer relationships.

115. 85. Moreover, Defendants' breaches of the implied covenant of good faith and fair dealing are continuing. Pyramid is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

116. 86. Pyramid has no adequate remedy at law and, unless injunctive relief is granted, Pyramid will continue to be irreparably harmed by Defendants' breaches of the implied covenant of good faith and fair dealing in a manner that is not fully compensable by money damages.

117. 87. Pyramid therefore requests that this Court grant injunctive relief against Defendants that prohibits Defendants from (a) accessing, duplicating or modifying Pyramid's Confidential Information; (b) selling any product, including any integrated kiosk or software, which contains Defendants' software solution created with Pyramid's Confidential Information, and (c) disclosing or selling Pyramid's Confidential Information to any third party.

- 19 -

118. 88. Pyramid further requests that this Court order Defendants to immediately return to Pyramid all Pyramid Confidential Information and property in their custody, possession, or control.

## COUNT III

### Unjust Enrichment (In The Alternative)

119. 89. Plaintiff realleges and incorporates by reference each paragraph above as if set forth herein.

120. 90. Defendants were enriched by their access, use, and retention of Pyramid's Confidential Information. Defendants were further enriched by the time, energy, effort, and resources saved by developing their integrated kiosk, which contains ticket validating software, using Pyramid's Confidential Information.

121. 91. Pyramid was impoverished due to the time, energy, effort, and resources it expended in developing its Confidential Information and not receiving compensation from Defendants for Defendants' use of Pyramid's Confidential Information.

122. 92. It would be unjust to permit Defendants to keep benefits conferred by Pyramid and not compensate Pyramid for the benefits it conferred on Defendants.

123. 93. Defendants' conduct was and is not justified.

124. 94. As a direct and proximate cause of Defendants' improper use of Pyramid's Confidential Information, Pyramid has incurred significant damages. Defendants' illegal actions have also damaged Pyramid's goodwill, reputation, and legitimate business interests. Pyramid's damages are in excess of $75,000.00, with an amount to be proven at trial.

125. 95. Moreover, Defendants' unjust actions are continuing as Defendants are using Pyramid Confidential Information and selling integrated kiosks with software developed by using Pyramid's Confidential Information. Pyramid is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

126. ~~96.~~ Pyramid has no adequate remedy at law and, unless injunctive relief is granted, Pyramid will continue to be irreparably harmed by Defendants' unjust actions in a manner that is not fully compensable by money damages.

127. ~~97.~~ Pyramid therefore requests that this Court grant injunctive relief against Defendants that prohibits Defendants from (a) accessing, duplicating or modifying Pyramid's Confidential Information, (b) selling any product, including any integrated kiosk or software, which contains Defendants' software solution created with Pyramid's Confidential Information, and (c) disclosing or selling Pyramid's Confidential Information to any third party.

128. ~~98.~~ Pyramid further requests that this Court order Defendants to immediately return to Pyramid all Pyramid Confidential Information and property in their custody, possession, or control.

## COUNT IV

### Violation of the Defend Trade Secrets Act (18 U.S.C § 1831, *et seq.*)

129. ~~99.~~ Plaintiff realleges and incorporates by reference each paragraph above as if set forth herein.

130. ~~100.~~ During the course of Defendants' relationship with Pyramid, Defendants were exposed to substantial amounts of Pyramid Confidential Information.

131. ~~101.~~ For instance, Defendants had access to the Licensed Software, USB Key, API Materials, Documentation, Software Development Kit, and other information.

132. ~~102.~~ The information identified in Paragraphs 31~~9~~ and ~~35~~48 is not available to the general public and is closely guarded by Pyramid. Pyramid keeps such information strictly confidential to maintain an advantage in the highly competitive ticket validation software business.

133. ~~103.~~ Pyramid Confidential Information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 183~~3~~1, *et seq.* ("DTSA"), because (a) the information is not generally known outside of Pyramid's business; (b) the information is not generally

known by employees and others involved in Pyramid's business; (c) Pyramid has taken reasonable measures to keep the information secret; (d) the information is of great economic value to Pyramid and its competitors; (e) Pyramid invested significant amounts of time and money in developing the information; (f) the information cannot easily be acquired or duplicated by others through proper means; and (g) because Pyramid continuously uses the information in its business.

134. The economic value of Pyramid's trade secrets / Confidential Information Defendants had access to under the Agreement is over ten million dollars.

135. ~~104.~~ Defendants further are under a contractual obligation to protect Pyramid Confidential Information.

136. ~~105.~~ Defendants, however, ignored (and continue to ignore) their obligations by using Pyramid Confidential Information to unfairly compete with Pyramid, and passing Pyramid Confidential Information along to third parties who are not authorized to receive, possess, or access Pyramid Confidential Information. This includes but is not limited to improperly using, ~~reverse engineering~~accessing and/or copying Pyramid's technology and corresponding software to create Defendants' prize ticket validating system which it offers as a separate solution contrary to the law.

137. ~~106.~~ Unless restrained, Defendants will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Pyramid Confidential Information.

138. ~~107.~~ Furthermore, actual or threatened misappropriation of confidential information may be enjoined under the DTSA.

139. ~~108.~~ Defendants' conduct makes clear they have no intention of complying with the DTSA.

140. ~~109.~~ Consequently, Defendants' actions constitute the actual and/or threatened misuse of Pyramid Confidential Information. Injunctive relief against Defendants is therefore appropriate.

141. ~~110.~~ Pyramid therefore requests an order enjoining Defendants from using Pyramid Confidential Information and from disclosing Pyramid Confidential Information to anyone not authorized to receive the Confidential Information.

142. ~~111.~~ Pyramid also requests that this Court enter an order enjoining Defendants from selling any product, including any integrated kiosk, or software which contains ticket validating software which uses Pyramid's Confidential Information.

143. ~~112.~~ Pyramid further requests an order requiring Defendants to return any and all Pyramid Confidential Information to Pyramid and/or destroy all Pyramid Confidential Information.

144. ~~113.~~ Finally, Defendants' misappropriation of Pyramid Confidential Information has been willful and malicious, and Pyramid has incurred significant damages as a result of Defendants' misappropriation.

145. ~~114.~~ Defendants' actions have also damaged Pyramid's goodwill, reputation, and legitimate business interests.

146. ~~115.~~ Pyramid is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Defendants' wrongful misappropriation of Pyramid's Confidential Information.

## COUNT V

**Violation of the Arizona Uniform Trade Secrets Act (A.R.S. § 44-401, *et seq.*)**

147. ~~116.~~ Plaintiff realleges and incorporates by reference each paragraph above as if set forth herein.

148. ~~117.~~ During the course of Defendants' relationship with Pyramid, Defendants were exposed to substantial amounts of Pyramid's Confidential Information.

149. ~~118.~~ For instance, Defendants had access to the Licensed Software, USB Key, API Materials, Documentation, Software Development Kit, and other information.

150.    ~~119.~~ The information identified in paragraphs 3~~1~~9 and ~~35~~48 is not available to the general public and is closely guarded by Pyramid. Pyramid keeps such information strictly confidential in order to maintain an advantage in the highly competitive software business.

151.    ~~120.~~ This information is considered a trade secret under the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401, *et. seq.*, because (a) Pyramid derives actual and potential commercial value and economic value from this information not being generally known to the public; (b) the information is not readily ascertainable through independent development by persons who can obtain economic value from its disclosure or use; and (c) the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

152.    The economic value of Pyramid's trade secrets / Confidential Information Defendants had access to under the Agreement is over ten million dollars.

153.    ~~121.~~ Defendants acquired Pyramid's trade secret information by improper means, including but not limited to misappropriating, decrypting, and retaining information they received solely in connection with Freedom's licensor-licensee relationship with Pyramid, and that, under the Agreement, Defendants were only permitted to use for integration with the Licensee Product.

154.    ~~122.~~ Under the AUTSA, "actual or threatened misappropriation may be enjoined." A.R.S. § 44-402.

155.    ~~123.~~ Defendants are misappropriating Pyramid trade secrets by using Pyramid's Confidential Information and trade secrets in furtherance of Defendants' interests, including to compete with Pyramid. This includes but is not limited to improperly using, ~~reverse engineering~~accessing and/or copying Pyramid's technology and corresponding software to create Defendants' prize ticket validating system which it offers as a separate software solution contrary to the law. Thus, injunctive relief is appropriate.

156. ~~124.~~ Accordingly, Pyramid requests that this Court enter an order enjoining Defendants from using any Pyramid Confidential Information, and from disclosing Pyramid Confidential Information to anyone not authorized to receive the Confidential Information.

157. ~~125.~~ Pyramid also requests that this Court enter an order enjoining Defendants from selling any product, including any integrated kiosk, or software which contains ticket validating software which uses Pyramid's Confidential Information.

158. ~~126.~~ Pyramid also requests that this Court enter an order requiring Defendants to return and/or destroy any and all Pyramid Confidential Information to Pyramid, as required pursuant to the Agreement and the AUTS~~T~~A.

159. ~~127.~~ Defendants' actions have damaged Pyramid's goodwill, reputation, and legitimate business interests.

160. ~~128.~~ In addition, Pyramid's damages are in excess of $75,000.00.

161. ~~129.~~ Pyramid is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial.

162. ~~130.~~ Finally, Defendants' misappropriation of Pyramid's trade secrets was willful and malicious.

163. ~~131.~~ Pyramid therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Defendants' willful and malicious misappropriation of Pyramid's trade secrets.

## COUNT VI

### Tortious Interference with Contract and/or Business Expectancy

164. ~~132.~~ Plaintiff realleges and incorporates by reference each paragraph above as if set forth herein.

165. ~~133.~~ Pyramid has valid contracts and/or business expectancy in a continued profitable relationship with its customers, including but not limited to ICS, which was obtained through the expenditure of substantial time, money and effort.

166.    134. Upon information and belief, at all relevant times, Defendants had knowledge of these contracts, as well as Pyramid's business expectancy in developing relationships with existing and potential customers, including but not limited to ICS and others in the TRT industry.

167.    135. Upon information and belief, Defendants knowingly and intentionally interfered with Pyramid's contracts and acted through improper means by inducing Pyramid's customers, including but not limited to ICS, to terminate, or otherwise breach, their agreements and/or business relationships with Pyramid and divert business to Defendants.

168.    136. Upon information and belief, Defendants knowingly and intentionally interfered with Pyramid's valid business expectancy with its current or prospective customers and acted through improper means by misappropriating Pyramid's trade secrets and other confidential and proprietary information.

169.    137. Defendants' unlawful interference has caused or will cause customers, including but not limited to ICS, to divert their business to FreedomDefendants over Pyramid. But for Defendants' unlawful interference, Pyramid would have retained and/or acquired these customers/prospective customers.

170.    138. Defendants' interference with the agreements and business expectancy of Pyramid's customers was intentional, malicious, done through improper means, and without justification.

171.    139. Defendants' actions have caused harm to Pyramid because Pyramid has lost relationships with current and potential customers as a result of Defendants' intentional interference.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiff Pyramid Technologies, Inc. respectfully requests that this Court enter a judgment as follows:

A.    Enter an injunction enjoining and restraining Freedom Gateway, LLC, SGK Vending, LLC and SGK Tech, LLC and their agents, representatives,

- 26 -

associates, employees, affiliates, and all those acting in concert or participating with them, from using any Pyramid Confidential Information for ~~its~~their own benefit; possessing or accessing any Pyramid Confidential Information; and from disclosing any Pyramid Confidential Information;

B.   Enter an injunction enjoining and restraining Defendants, and all those acting in concert or participation with them, from selling any product, including any integrated kiosk or software, which contains ticket validating software which was created through the use of Pyramid's Confidential Information.

C.   Enter an injunction requiring Defendants to provide a list of Defendants' customers who have purchased an integrated kiosk or software, which contains ticket validating software which was created through the use of Pyramid's Confidential Information.

D.   Enter an order requiring Defendants, and all those acting in concert or participation with them, to return and/or destroy all Pyramid Confidential Information in their possession, custody, or control to Pyramid;

E.   Enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

F.   Enter judgment against Defendants for consequential damages in an amount to be determined at trial;

G.   Enter judgment against Defendants for unjust enrichment damages, including but not limited to disgorgement of profits, in an amount to be determined at trial;

H.   Enter judgment against Defendants for punitive damages in an amount to be determined at trial;

I.   Award Pyramid the costs and expenses, including reasonable attorneys' fees, Pyramid incurs as a result of Defendants' breach of the Agreement;

J.    Award Pyramid the costs and expenses, including reasonable attorneys' fees, Pyramid incurs as a result of Defendants' violation of the Arizona Uniform Trade Secrets Act and Federal Defend Trade Secrets Act;

K.    Award Pyramid its reasonable attorneys' fees for this litigation pursuant to A. R. S. § 12-341.01;

L.    Award Pyramid pre-judgment and post-judgment interest at the maximum rate; and

M.    Award Pyramid such other and further relief as this Court deems equitable, proper and just.

///

///

///

## JURY TRIAL DEMANDED

Plaintiff Pyramid Technologies, Inc. demands a jury trial on all claims so triable.

Dated:   ~~March~~May 4, 2026                    Respectfully submitted,


/s/ _____

Patricia V. Waterkotte (Bar No. 029231)
**RUSING LOPEZ LIZARDI &
SAFFER, P.L.L.C.**

and

Kal K. Shah (*pro hac vice* ~~*forthcoming*~~)
Emily Wilbur (*pro hac vice*)
Samantha L. Marchand (*pro hac vice*)
**BENESCH FRIEDLANDER COPLAN
& ARONOFF LLP**

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this May 4, 2026 via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, on the CM/ECF registrants:


Nasir S. Ahmed
**K&L GATES LLP**
One SW Columbia Street, Suite 1900
Portland, OR 97204
Arizona Bar No. 038608
Telephone: (503) 226-5739
Facsimile: (503) 248-9085
Email: nasir.ahmed@klgates.com


           */s/*
           Patricia V. Waterkotte